UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GALEN YEARGAIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SUMMIT TREE STANDS, L.L.C., ) <br> and OUTDOOR HUNTING SUPPLIES, ) <br> INC., d/b/a Outdoors Experience, ) <br> ) <br> Defendants. ) | Case No. 1:09CV00170 LMB |

## MEMORANDUM AND ORDER

Presently pending before the court is Defendant Summit Treestands, LLC's Motion to Bar the Testimony and Opinions of Plaintiff's Expert Norman Johanson. (Doc. No. 29). Plaintiff has filed a Response. (Doc. No. 41). Defendants have filed a Reply. (Doc. No. 43).

### Background

This product liability action arises out of personal injuries sustained by Plaintiff Galen Yeargain when he fell from a tree during a hunting trip on November 4, 2008. Plaintiff claims that he fell due to a manufacturing defect in a Summit Titan Treestand ("Titan") manufactured by Defendant Summit Treestands, LLC ("Summit"). The Titan consists of a seat frame and foot platform that each connect to a tree by retention cables with cable stops at each end that are seated inside cable brackets on either side of the seat frame and foot platform. QuickDraw cable springs lock each cable into place when the user pulls the cable toward the back of the bracket after threading the cable and cable stop through keyhole slots in the brackets.

Plaintiff has designated Norman Johanson to serve as an expert witness in this case. Mr. Johanson prepared a report, in which he concludes that plaintiff's fall was caused by a manufacturing defect in the Titan treestand. The main fault Mr. Johanson finds with the Titan treestand at issue is

the improper installation of an incorrect rivet, which, in his opinion, resulted in a bracket failure causing the safety cable to be released from the tree.

Defendant Summit seeks to exclude from evidence all testimony and opinions of Mr. Johanson. Defendant first argues that Mr. Johanson's opinions should be barred because Mr. Johanson is insufficiently qualified to serve as an expert in this case. Defendant next contends that Mr. Johanson's opinions are based upon insufficient facts and data and are not the products of reliable principles and methods. Finally, defendant argues that Mr. Johanson has not applied principles and methods reliably to the facts of this case.

Neither party has requested that the court conduct an evidentiary hearing, and the court finds that a hearing is not necessary in order to rule on defendant's motion. The facts upon which the court must make its determination have been adequately presented to the court in the parties' pleadings and accompanying exhibits.

**Legal Framework**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

It has been said that Rule 702 is one of admissibility rather than exclusion. Lauzon v. Senco Prods., Inc., 270 F.3d 681 (8th Cir. 2001) (citing Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991)).

Additionally, Rule 703 clarifies the permissible bases of opinion testimony by experts. Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Rule 704 clarifies when expert opinion testimony on the ultimate matter at issue is admissible:

> (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that "[p]roposed testimony must be supported by appropriate validation - i.e. 'good grounds,' based on what is known." 509 U.S. at 590, 113 S. Ct. at 2795. The court also established that a trial judge is to perform a "gatekeeping" role to ensure that all scientific testimony or evidence admitted is both reliable and relevant. See Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1298 (8th Cir. 1997). In Daubert, the Supreme Court established the following four factors to be considered: (1) whether the reasoning or methodology can be and has been tested, (2) whether the reasoning or methodology has been subjected to peer review, (3) whether the reasoning or methodology has a known or potential rate of error, and (4) whether the reasoning or methodology has been generally accepted by the scientific community. See id. (citing Daubert, 509 U.S. at 593-594, 113 S.Ct. at 2796-2797). "The Daubert Court stressed that 'many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test.'" Id. (quoting Daubert, 509 U.S. at 593, 113 S.Ct. at 2796). "It is clear

3

that the Court did not intend for a trial judge to automatically exclude relevant evidence if one of these conditions was not fully satisfied." Id.

Daubert further recognized that the standards delineated in its opinion applied only to the admissibility of the evidence; the weight to be accorded to such testimony was still a matter for the jury. The Daubert criteria is properly applied "not only to 'scientific' knowledge but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999). The Supreme Court held in Daubert that "[t]he focus (of its inquiry into the reliability of expert scientific testimony), of course, must be solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595, 113 S.Ct. at 2797. Rather, " vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596, 113 S.Ct. at 2798.

The proponent of expert testimony bears the burden of proving by a preponderance of the evidence that the testimony is admissible. Daubert, 509 U.S. at 592, 113 S.Ct. at 2796; Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001). Expert testimony is admissible if it will assist the trier of fact and if "(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods and (3) the witness has applied the principles and methods reliably to the facts of the case." Daubert, 509 U.S. at 593-95, 113 S.Ct. at 2796-97.

### Discussion of Daubert Factors

**A.     Qualifications of Mr. Johanson**

Defendant first argues that Mr. Johanson is not sufficiently qualified to offer expert testimony in this case. Defendant states that Mr. Johanson has a background in small household appliances,

4

cookware, ink jet printing equipment, heaters, and semiconductors, but not in treestands or similar hunting equipment. Defendant points out that Mr. Johanson has never held a professional engineering license, has never obtained any certifications specific to treestand manufacture or design, has never bought a treestand or similar product for his own use, has never previously evaluated a cable retention mechanism such as the one involved in this case, and has never previously encountered a situation similar to the one involved in this case where a hunter disconnected both his safety harness and treestand cable while climbing a tree. In addition, defendant argues that Mr. Johanson has never authored any professional literature that has to do with hunting, hunting equipment, or treestands, other than reports he has prepared for litigation. Defendant contends that plaintiff cannot rely on Mr. Johanson's engineering experience alone as independent verification for the soundness of his theory.

Plaintiff argues that Mr. Johanson's formal education, training, and experience qualify him to render an opinion in this case regarding the quality assurance program or protocol of Defendant Summit and the incorrect installation of a rivet that caused a safety bracket to fail.

A witness may be qualified as an expert by virtue of knowledge, skill, experience, training or education. See Fox v. Dannenberg, 906 F.2d 1253, 1256 (8th Cir. 1990). "The threshold question of whether a witness is competent as an expert is solely for the trial judge, and, as the text of Rule 702 suggests, the central issue is whether the expert's testimony will assist the trier of fact." Id. "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (quoting Larabee v. MM&L International Corp., 896 F.2d 1112, 1116 (8th Cir. 1990)). A trial court should ordinarily "exclude an expert opinion only if it is so fundamentally unsupported that it cannot help the factfinder." Id. (quoting Hurst v. United States, 882 F.2d 566, 570 (8th Cir. 1988)). "Once the trial court has determined that a witness is competent to testify as

5

an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility." Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 283 (8th Cir. 1995) (quoting Fox, 906 F.2d at 1256). "The question of the expert's credibility and the weight to be accorded to the expert testimony are ultimately for the trier of fact to determine." Fox, 906 F.2d at 1256.

The court finds that Mr. Johanson, a mechanical engineer, is qualified to proffer his opinion as to the quality assurance program or protocol of Defendant Summit and the alleged manufacturing defect of a rivet. Mr. Johanson's curriculum vitae ("C.V.") reveals a lengthy career in the field of mechanical engineering, particularly in the area of product design and manufacturing. (Doc. No. 41-1). Mr. Johanson is a certified manufacturing engineer in the field of product engineering for manufacturing. (Id.). Mr. Johanson is affiliated with numerous professional organizations, including societies for mechanical engineers, safety engineers, manufacturing engineers, and for those engaged in materials and metals research. (Id.). Since 1995, Mr. Johanson has worked in the field of litigation at Robson Forensic, where his work has consisted of product analysis. (Id.).

Defendant takes issue with the fact that Mr. Johanson does not have a background in treestands or similar hunting equipment, has never obtained any certifications specific to treestand manufacture or design, has never previously evaluated a cable retention mechanism such as the one involved in this case, and has never previously encountered a situation similar to the one involved in this case where a hunter disconnected both his safety harness and treestand cable while climbing a tree. With regard to certification specific to treestand manufacture or design, Mr. Johanson acknowledged that he did not have such certification but testified that he was not aware of any such certification programs. (Doc. No. 41-3 at p. 14). Mr. Johanson stated that, although he had never previously evaluated a cable retention mechanism such as the one involved in this case, he was not

6

aware of any other manufacturers other than Defendant Summit that used the same type of cable retention mechanism as the one involved in this case. (Id. at p. 2). Mr. Johanson further testified that has designed fastening components through his experience designing various products, including small appliances. (Id. at 29).

While Mr. Johanson does not have prior experience in treestand manufacture or design, Mr. Johanson testified that, in the course of his employment with Robson Forensic he has performed "design work in regard to altering the configurations of specific features in treestands." (Id. at 22). Mr. Johanson testified that product safety and accident prevention are the basis for the work he has done in designing and manufacturing products. (Id.). Mr. Johanson indicated that his experience in product analysis has included analyzing treestand malfunctions and that he handles three to four treestand cases in an average year. (Id. at 18-22). Mr. Johanson testified that he keeps an ongoing file regarding Consumer Product Safety Commission documents pertaining to treestand injuries. (Id. at 5-7). In addition, Mr. Johanson testified that he is a deer hunter who has used deer stands, including Summit treestands; and that he completed a hunter safety course in Maine fifteen years ago. (Id. at 7-20).

In sum, Mr. Johanson's education and extensive experience in product design and manufacturing qualify him to testify as an expert in the subject areas of the report. Mr. Johanson has experience designing fastening components and is thus qualified to provide an opinion regarding the proper design and installation of a rivet. Mr. Johanson is similarly qualified to provide an opinion regarding the quality assurance program or protocol of Defendant Summit. Any "challenges to [Mr. Johanson's] skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility." Sylla-Sawdon, 47 F.3d at 283.

7

**B.     Factual Basis**

Defendant argues that, even if Mr. Johanson were sufficiently qualified to offer expert opinion in this case, the theory he propounds is not based upon sufficient facts or data. Specifically, defendant contends that Mr. Johanson never spoke with plaintiff, never reviewed plaintiff's discovery responses, never read plaintiff's or any other witnesses' depositions, and never went to the accident scene. Defendant argues that Mr. Johanson does not know which side of the Titan's seat platform cable plaintiff released and did no testing and has no information regarding how or if plaintiff connected the Titan's seat platform cable when moving his seat platform around the tree branch. Defendant claims that Mr. Johanson also has no information regarding the purported foreseeability of a situation similar to the one involved in this case or the purported propensity of hunters to move around branches when using a treestand. Finally, defendant argues that Mr. Johanson lacks sufficient facts or data to support his criticism of Summit's quality control plan.

An expert must have a reasonable factual basis for his testimony. See Fed. R. Evid. 702, 703; Daubert, 509 U.S. at 589, 113 S.Ct. at 2795 . Under Eighth Circuit law, however, "'[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 416 (8th Cir. 2005), quoting Hartley v. Dillard's, Inc., 310 F.3d 1054, 1061 (8th Cir. 2002). The expert's opinion thus should be excluded only when it is, "so fundamentally unreliable that it can offer no assistance to the jury." Harrington v. Sumbeam Products, Inc., 2009 WL 701994 at * 4 (E.D. Mo. Mar. 13, 2009).

Prior to reaching his conclusions, Mr. Johanson reviewed numerous materials, as stated in his December 27, 2010 Report. (Doc. No. 41-2 p. 2). These materials include: plaintiff's Complaint;

8

Defendant Summit's Answer; photographs of the site and treestand; Summit's 2008 Instruction Booklet; the subject Titan treestand; and the Quality Assurance Program or Protocol provided by Summit that pertained to the design and manufacture of the subject treestand. (Doc. No. 41-2 p. 2; Doc. No. 41-3 p. 104). These documents provided the basis for Mr. Johanson's conclusions. For example, in his report, Mr. Johanson discussed Summit's Quality Assurance Program and engineering drawings and noted that no testing or visual examination was done of treestand cable retention mechanisms. (Doc. No. 41-2 p. 7-8). Mr. Johanson examined the subject treestand, focusing on the cable retention mechanism, and observed that the cable spring of the seat platform was not securely riveted to the treestand cable retention bracket. (Id. at p. 8). Mr. Johanson then examined and measured the cable spring-to-cable retention bracket rivet and the cable retention bracket hole size and compared the measurements to Summit's specifications set forth in engineering drawings. (Id. at 8-10). The court finds that Mr. Johanson cited sufficient facts and data to support his conclusions regarding the alleged manufacturing defects and deficient quality control procedures.

Defendant argues that, because Mr. Johanson did not speak with plaintiff or review his deposition, Mr. Johanson does not know how plaintiff connected the treestand seat platform cable when moving his seat platform around the branch he encountered while climbing, and does not know which side of the treestand seat platform cable plaintiff removed before he fell. With regard to these allegations, Mr. Johanson testified in his deposition that he believed he had an understanding of what happened and that the evidence he reviewed revealed the alleged defect. (Doc. No. 41-3 p. 86). The arguments raised by plaintiff affect the weight, rather than the admissibility of Mr. Johanson's testimony. As such, the court declines to exclude Mr. Johanson's testimony on this basis.

9

**C.      Reliability of Methods and Application of Facts to Case**

Defendant next argues that Mr. Johanson's testimony and opinions are not the product of reliable principles and methods and are not the result of reliable application to the facts of this case. Defendant makes the following arguments: (1) although Mr. Johanson found in his report that plaintiff used the Titan "in the manner intended by Summit," the undisputed facts of this case reveal otherwise; (2) Mr. Johanson used information from the Consumer Product Safety Commission ("CPSC") and the National Electronic Injury Surveillance System ("NEISS") to support his opinion that what plaintiff did was foreseeable by Summit even though Mr. Johanson does not know how or what information is collected by the CPSC and NEISS or whether the accident reports given to the CPSC were valid; (3) Mr. Johanson's opinion that the loose condition of the rivet existed at the time of manufacture is not reliable; (4) Mr. Johanson failed to account for alternative causes of the accident; and (5) the limited testing Mr. Johanson did conduct was highly flawed.

Although defendant has set forth many arguments in support of its claim that Mr. Johanson's are unreliable and were unreliably applied to the facts of this case, defendant focuses its argument on its fifth claim.   In fact, this is the only claim discussed in defendant's Reply.  (Doc. No. 43).  The undersigned finds that defendant's first four arguments are more properly directed to the weight to be accorded Mr. Johanson's opinions rather than to the question of admissibility.  As such, these arguments will not be discussed, and the court will proceed to defendant's fifth claim.

As previously stated, defendant argues that the limited testing Mr. Johanson conducted was highly flawed.  Defendant notes that, to demonstrate how the rivet was allegedly improperly driven, Mr. Johanson drilled holes in a piece of aluminum and drove rivets into the holes using a rivet gun. Defendant points out that Mr. Johanson did not measure the width of the aluminum to compare it to the width of a mated QuickDraw cable spring (he believes the width was one-eighth of an inch);

10

drilled holes 0.200" and 0.250" in diameter rather than what he believed to be the hole diameter on the Titan (0.140"); and drove rivets 0.187" in diameter rather than 0.125" in diameter as on the Titan. (Doc. No. 29-3 p. 197-203).  Defendant alleges that Mr. Johanson was trying to manufacture a result by conducting tests in which the diameter of the rivets and the diameter of the rivet holes were large enough to demonstrate what could not be demonstrated using exemplar rivets.

The Eighth Circuit has held as follows with regard to experimental tests in product liability cases:

> The admissibility of evidence of experimental tests rests largely in the discretion of the trial judge and [its] decision will not be overturned absent a clear showing of an abuse of discretion.  A court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions.  Admissibility, however, does not depend on perfect identity between actual and experimental conditions.

McKnight v. Johnson Controls, 36 F.3d 1396, 1401 (8th Cir. 1994) (quoting Champeau v. Fruehauf Corp., 814 F.2d 1271, 1278 (8th Cir. 1987).  Testing, if performed, must be appropriate in the circumstances and must actually prove what the experts claim it proves.  See Presley v. Lakewood Engineering and Manufac. Co., 553 F.3d 638, 646 (8th Cir. 2009); Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1058-59 (8th Cir. 2005).  However, "[w]here the experimental tests do not purport to recreate the accident, but instead the experiments are used to demonstrate only general scientific principles, the requirement of substantially similar circumstances no longer applies." McKnight, 36 F.3d at 1401.

In this case, the specifications Mr. Johanson used for his testing did not match the specifications of the components of the subject treestand.  Specifically, the piece of aluminum Mr. Johanson used for his tests was a different width than that of a mated QuickDraw cable spring, the holes Mr. Johanson drilled for the test rivets were significantly larger in diameter than the holes on the subject treestand, and the test rivets were much wider in diameter than those used on the subject

11

treestand. Plaintiff provides no explanation as to why Mr. Johanson did not use the same specifications as the subject treestand in his testing. Rather, plaintiff argues in his Response that the testing conducted by Mr. Johanson is capable of being repeated. Plaintiff also contends generally that Mr. Johanson's testing was "based on scientific principles, measurements and established outcomes, not speculation." (Doc. No. 41 p. 12).

Notably, plaintiff does not argue in his Response that the purpose of Mr. Johanson's testing was to demonstrate only general scientific principles. Plaintiff has, however, attached a new Affidavit of Mr. Johanson, in which he states that his "examples of riveted connections...were not intended to replicate the defectively riveted Summit treestand spring-to-bracket connection that released the Summit retention cable at the time of [plaintiff's] fall and injury." (Doc. No. 41-7 p. 4). Mr. Johanson does not indicate the intended purpose of his testing or why he could not have used the same specifications as the subject treestand. If Mr. Johanson intended merely to demonstrate general scientific principles, he did not set out those principles. In fact, in his deposition, Mr. Johanson stated that the purpose of his testing was to compare his work to "what [he] observed on the incident treestand." (Doc. No. 29-3 p. 198). Further, the argument set forth in plaintiff's Response tends to support the finding that Mr. Johanson was attempting to replicate the subject treestand. Plaintiff argues Mr. Johanson "made conclusions based on not only his observations, but his testing as well." (Doc. No. 41). As such, the purpose of Mr. Johanson's testing was not to merely demonstrate general scientific principles but rather, was to replicate the subject treestand.

The subject treestand and the testing performed were not, however, substantially similar. In his report, Mr. Johanson expressed the opinion that the rivet hole diameter of the subject treestand "significantly exceeds the allowable range for use with the Summit specified MARSON SSB4-3 rivet. The allowable hole size range for this rivet is 0.129" to 0.133"." (Doc. No. 41-2 p. 9). The diameter

12

of the rivet hole of the subject treestand was 0.140", a difference of 0.007" to 0.011" larger than the ideal hole diameter. (Id.). Yet the rivet holes Mr. Johanson drilled for testing were 0.200" and 0.250" in diameter, much larger than the holes in the subject treestand. The rivets Mr. Johanson drove were 0.187" in diameter, rather than 0.125" in diameter as on the subject treestand. When driving 0.187" rivets into the 0.200" holes (a difference of 0.013"), the rivets expanded and filled the holes, with no looseness. (Doc. No. 29-3 p. 197-201). Mr. Johanson was only able to create and demonstrate a "loose" rivet when driving the 0.187" rivets into the 0.250" holes, a difference of 0.063", compared to the difference of 0.015" between the rivet and the rivet hole of the subject treestand. (Id.). The difference between the test rivet and the rivet hole was, therefore, approximately 4.2 times greater than the difference between the rivet and the rivet hole of the subject treestand. (Id.).

The undersigned finds that the testing performed by Mr. Johanson was inaccurate. To perform accurate and reliable testing, Mr. Johanson should have simply used the specifications of the subject treestand. Instead, Mr. Johanson did not measure the width of the aluminum to compare it to the width of a mated QuickDraw cable spring, drilled holes much larger than the hole diameter of the subject treestand, and drove rivets that were much larger in diameter than the rivets of the subject treestand. Mr. Johanson performed this testing to support his central theory that plaintiff's injury was caused by a manufacturing defect in the subject treestand. Plaintiff acknowledges in his Response that Mr. Johanson's conclusions were "based on not only his observations, but his testing as well." (Doc. No. 41). Mr. Johanson's testimony and opinions, therefore, are not reliable and would only confuse a jury. Plaintiff has failed to satisfy his burden to demonstrate by a preponderance of the evidence that the testimony is admissible. Daubert, 509 U.S. at 592, 113 S.Ct. at 2796 . Thus,

13

Defendant Summit's Motion to Bar the Testimony and Opinions of Plaintiff's Expert Norman Johanson will be granted.

Accordingly,

**IT IS HEREBY ORDERED** Defendant Summit Treestands, LLC's Motion to Bar the Testimony and Opinions of Plaintiff's Expert Norman Johanson (Doc. No. 29) be and it is **granted.**

**IT IS FURTHER ORDERED** that, in the interest of justice, plaintiff will be granted ten (10) days in which to request an additional thirty (30) days to remedy the deficiency in Mr. Johanson's testimony.

Dated this   13th   day of October, 2011.

*Lewis M. Blanton*

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE