UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| GALEN YEARGAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:09CV00170 LMB |
| ) | |
| SUMMIT TREE STANDS, L.L.C., ) | |
| and OUTDOOR HUNTING SUPPLIES, ) | |
| INC., d/b/a Outdoors Experience, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on the Complaint of Plaintiff Galen Yeargain alleging a product liability action against Defendant Summit Treestands, LLC ("Summit").[1]  This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties.  See 28 U.S.C. § 636(c).

The following motions are presently pending and fully briefed:  Defendant Summit's Motion for Summary Judgment (Doc. No. 31), Defendant Summit's Motion to Reconsider the Memorandum and Order Granting Plaintiff's Motion for Extension of Time and Leave of this Court to Reopen Expert Discovery (Doc. No. 56), and plaintiff's Motion to Reconsider the court's Memorandum and Order granting defendant's Motion to Bar the Testimony and Opinions of Plaintiff's Expert Norman Johanson (Doc. No. 61).

---

[1]On May 7, 2010, this action was dismissed without prejudice as to Defendant Outdoor Hunting Supplies, Inc.  (Doc. No. 12).

**Background**

This is a product liability case involving a Summit Titan Treestand manufactured by Summit and purchased and used by plaintiff Galen Yeargain.  In his Complaint, plaintiff has alleged a specific manufacturing defect in his treestand that purportedly caused him to fall from a tree while on a hunting trip in Leopold, Missouri, on November 4, 2008.  The specific product defect plaintiff has alleged is as follows: a locking device design to secure the treestand to a tree "failed to properly work, or otherwise secure [him] from falling."  (Doc. No. 1, ¶ 14).  Summit has referred to this locking device as a cable retention mechanism.  In this case, plaintiff has not pled, and discovery was never conducted on, a res ipsa-type theory of an implied or inferred product defect.

Summit filed a Motion to Bar the Testimony and Opinions of Plaintiff's Expert Norman Johanson, which the court granted on October 13, 2011. (Doc. No. 49).  The undersigned found that the testing performed by Mr. Johanson to support his theory was unreliable and inadmissible.  In the interest of justice, however, the court granted plaintiff ten days in which to request an additional thirty days to attempt to remedy the deficiency in Mr. Johanson's testimony.

Pursuant to the court's order, plaintiff filed a Motion for Extension of Time and Leave of Court, in which he requested an additional thirty days to conduct discovery in order to  allow Mr. Johanson to perform additional testing.  (Doc. No. 51).  The court granted plaintiff's motion over defendant's objection on November 15, 2011.  (Doc. No. 55).

**Discussion**

As previously stated, three motions are presently pending before the court.  The court will address these motions in turn, beginning with defendant's motion to reconsider.

I.	**Defendant's Motion to Reconsider**

On November 30, 2011, defendant filed a Motion to Reconsider the Memorandum and Order Granting Plaintiff's Motion for Extension of Time and Leave of this Court to Reopen Expert Discovery.  (Doc. No. 56).  Plaintiff has filed a Response (Doc. No. 59), and defendant has filed a Reply (Doc. No. 60).

The Federal Rules of Civil Procedure "do not mention motions for reconsideration." Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999).  The Eighth Circuit has determined that motions for reconsideration are "nothing more than Rule 60(b) motions when directed at non-final orders."  Anderson v. Raymond Corp., 340 F.3d 520, 525 (8th Cir. 2003).  Under Rule 60(b), the court may relieve a party from an order or judgment when the party demonstrates, for example, "mistake, inadvertence, surprise, or excusable neglect."  Fed.R.Civ.P. 60(b)(1).

In its motion, defendant argues that the court should reconsider its order granting plaintiff's motion for additional discovery because the "overwhelming legal authority from other federal jurisdictions" supports the proposition that a district court does not have discretion to reopen expert discovery after the expert's testimony has been ruled inadmissible.  (Doc. No. 57, p. 11).

For the reasons set out in the court's November 15, 2011 Memorandum and Order granting plaintiff's motion for additional discovery (Doc. No. 55), defendant's motion for reconsideration will be denied.  The parties have both conducted additional discovery pursuant to the court's order, and this evidence will be considered with regard to plaintiff's motion to reconsider.

**II.     Plaintiff's Motion to Reconsider**

On December 15, 2011, plaintiff filed a motion to reconsider the court's Memorandum and Order granting defendant's Motion to Bar the Testimony and Opinions of Plaintiff's Expert Norman Johanson.  (Doc. No. 61).  Defendant has filed a Response (Doc. No. 66), plaintiff has filed a Reply (Doc. No. 67), and defendant has filed a Sur-Response (Doc. No. 68).

In his motion to reconsider, plaintiff states that Mr. Johanson conducted further testing, and has prepared a supplement to his previous report.  Plaintiff argues that Mr. Johanson's supplemental report cures and remedies any deficiencies set forth by the court in its previous decision excluding Mr. Johanson's testimony.  Plaintiff thus requests that the court reconsider its decision excluding Mr. Johanson's testimony.  Plaintiff has attached as exhibits Mr. Johanson's Supplemental Report, a video and photographs of Mr. Johanson's rivet testing, the Deposition of Ronald Ray Woller, and plans and specifications of the subject treestand.

Defendant argues that Mr. Johanson's subsequent testing suffers from the same types of deficiencies previously identified by the court with regard to Mr. Johanson's initial testing.  Defendant contends that there is no basis for the court to reconsider its earlier Order barring Mr. Johanson's testimony and opinions, and that the court should enter summary judgment in favor of defendant.  Defendant also argues that the court should award defendant the attorney's fees, expenses, and costs incurred conducting the additional discovery.  Defendant has attached the deposition of Norman Johanson taken after his additional testing, along with evidence in support of its motion for attorney's fees and expenses.

**A.     Mr. Johanson's Supplemental Report**

Under Federal Rule of Evidence 702, an expert opinion is admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." When determining the reliability of an expert's opinion, the court examines the following factors: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) "[the method's] 'general acceptance.'" Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593-94 (1993).

The Eighth Circuit has held as follows with regard to experimental tests in product liability cases:

> The admissibility of evidence of experimental tests rests largely in the discretion of the trial judge and [its] decision will not be overturned absent a clear showing of an abuse of discretion. A court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions.

McKnight v. Johnson Controls, 36 F.3d 1396, 1401 (8th Cir. 1994) (quoting Champeau v. Fruehauf Corp., 814 F.2d 1271, 1278 (8th Cir. 1987). Testing, if performed, must be appropriate in the circumstances and must actually prove what the experts claim it proves. See Presley v. Lakewood Engineering and Manufac. Co., 553 F.3d 638, 646 (8th Cir. 2009); Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1058-59 (8th Cir. 2005). However, "[w]here the experimental tests do not purport to recreate the accident, but instead the experiments are used to demonstrate only general scientific principles, the requirement of substantially similar circumstances no longer applies." McKnight, 36 F.3d at 1401.

Mr. Johanson indicates in his Supplemental Report that the purpose of the subsequent rivet attachment testing was to address issues raised in his prior report "using components and equipment consistent with the Summit rivet joint configuration." (Doc. No. 61, p. 3). Mr. Johanson stated that he purchased an exemplar Summit treestand, cut off the cable retention

bracket assembly, creating a 3-7/8 x 1-38" plate, removed the spring, and sanded off the external paint, exposing the bare aluminum surface. (Id.). Mr. Johanson first used a Marson —3 pneumatic riveting gun to set four Marson SB4-3 rivets, and then used a manual riveting gun to set seventeen Marson SB4-3 rivets. (Id.). Mr. Johanson videotaped the testing, and photographed the rivets set into the test plate. (Id. at p. 4). Mr. Johanson indicated that the test results were fully in conformance with his preliminary report analysis. (Id.).

The court has carefully reviewed the supplemental report of Mr. Johanson, along with the exhibits submitted by the parties, as well as the parties' briefs, and concludes that there is no basis to reconsider the court's previous order excluding the testimony and opinions of Mr. Johanson. As the court will address in more detail below, Mr. Johanson's subsequent testing suffered from similar deficiencies as the court identified in its earlier order excluding Mr. Johanson's testimony and opinions.

Defendant sets out many perceived deficiencies in Mr. Johanson's subsequent testing. The court will only discuss the issues that, in its view, affected the reliability of Mr. Johanson's testing. These issues are related to the following aspects of Mr. Johanson's testing: the size of the QuickDraw cable spring mated to a cable bracket; the types of rivets and guns used; and the strength of the rivets.

### 1. Size of QuickDraw Cable Spring Mated to Cable Bracket

Defendant argues that when fabricating the workpiece into which he would set his rivets, Mr. Johanson did not account for the size of a QuickDraw cable spring mated to a cable bracket. Defendant notes that the court specifically pointed to this deficiency with regard to Mr. Johanson's previous testing in its order excluding Mr. Johanson's testimony and opinions. Plaintiff does not address this issue in his Reply.

In the court's previous decision excluding Mr. Johanson's testimony and opinions, the undersigned specifically pointed out that the piece of aluminum Mr. Johanson used for his test was a different thickness[2] than that of a mated QuickDraw cable spring, and found that this was one of the errors in Mr. Johanson's testing methodology. Despite this finding by the court, Mr. Johanson did not account for the size of a QuickDraw cable spring mated to a cable bracket in his subsequent testing. In his deposition, Mr. Johanson acknowledged that accounting for the size of a QuickDraw cable spring mated to a cable bracket would result in a thicker piece, and that he could have accounted for this factor, yet he did not do this in his testing, stating that he believed it "would add nothing to the test results." (Doc. No. 66-1, p. 171-72).

The undersigned finds that Mr. Johanson's continued failure to account for the thickness of the size of a QuickDraw cable spring mated to a cable bracket was error, and that this error affected the reliability of his testing.

### 2. Type of Rivets and Rivet Gun Used

Defendant argues that, while Summit's specifications call for a Marson SSB4-3 stainless steel rivet or an equivalent rivet, Mr. Johanson used a combination of Marson SB4-3 steel (non-stainless) rivets, and longer stainless steel rivets made by an unknown manufacturer.

Mr. Johanson used the longer rivets to test his theory that the rivet used in the subject treestand exceeded the length of the rivet specified by Summit. (Doc. No. 61). Mr. Johanson expressed the opinion in his deposition that the steel rivets he used were equivalent to the Marson SSB4-3 stainless steel rivets required by Marson. (Doc. No. 66-1, p. 206). Mr. Johanson,

---

[2]As defendant accurately points out, the court mistakenly referred to the "width" of the piece of aluminum, when it intended to discuss the "thickness." (Doc. No. 49, p. 11-12).

- 7 -

however, also acknowledged that stainless steel rivets are stiffer, stronger, and require more force to set than steel rivets. (Id. at 134-36, 138).

Defendant also points out that Mr. Johanson used a manual gun for the majority of his testing rather than a pneumatic gun. Plaintiff argues that the Summit specifications do not indicate whether a pneumatic or gun is to be used.

Although the Summit specifications do not require the use of a pneumatic gun, Mr. Johanson testified that he knew the riveting procedures used by Summit in manufacturing the subject treestand, and that a pneumatic rivet gun was used. (Doc. No. 66-1, p. 88). Mr. Johanson also indicated that stainless steel rivets are not to be set with a manual rivet gun, pursuant to the instructions accompanying the rivet gun used by Mr. Johanson. (Doc. No. 66-1, p. 201-02). In addition, in Mr. Johanson's first deposition, he testified that he never used a manual rivet gun in an industrial setting for production. (Doc. No. 29-3, p. 210).

In sum, Mr. Johanson failed to use the same rivets and rivet gun used by Summit when he could have done so, and provides no good reason for his failure to do so. When the stated purpose of Mr. Johanson's testing was to conduct testing using "components and equipment consistent with" that of Summit's, it cannot be said that these deviations had no impact on the reliability of Mr. Johanson's testing.

### 3. Strength of Rivets

Finally, defendant notes that Mr. Johanson did not measure the strength of any of the twenty-one rivets set, and does not know the required strength of the rivets for the subject model treestand. (Doc. No. 66-1, p. 81-82). Mr. Johanson acknowledged that a rivet could be set at an angle and still be strong enough to function properly. (Id. at p. 80-81). Plaintiff did not address this issue in his Reply.

The court finds that, without knowing the strength of any of the rivets set or the required strength of the subject treestand, Mr. Johanson has no basis for his opinion that the rivets in the subject treestand were not strong enough to function properly.

### 4. Conclusion

In his subsequent testing, Mr. Johanson again failed to account for the thickness of the size of a QuickDraw cable spring mated to a cable bracket. Mr. Johanson also inexplicably deviated from Summit's specifications and procedures by failing to use the same types of rivets and rivet gun as those used by Summit. Finally, and perhaps most troubling, Mr. Johanson did not measure the strength of any of the twenty-one rivets set, and does not know the required strength of the rivets for the subject model treestand. As such, Mr. Johanson's testing did not actually prove what he claimed it proved. See Presley, 553 F.3d at 646. Due to these deficiencies, the undersigned finds that Mr. Johanson's subsequent testing was unreliable and would only confuse a jury. Thus, the court finds no basis to reconsider its previous decision excluding the testimony and opinions of Mr. Johanson.

### B. Defendant's Request for Attorney's Fees and Costs

Defendant, citing Rules 26(a)(2)(B) and 37(c)(1), argues that the court should award defendant its attorney's fees, expenses, and costs totaling $13,594.83, in connection with Mr. Johanson's second deposition and preparing defendant's renewed motion to bar the testimony and opinions of Mr. Johanson.

The court declines to award attorney's fees and costs to defendant as a sanction. Plaintiff did not engage in any conduct in this action with respect to Mr. Johanson's opinions or otherwise, that would justify the award of sanctions.

## III.   Defendant's Motion for Summary Judgment

Defendant argues that, following the exclusion of Mr. Johanson's testimony, plaintiff has no qualified defect expert, and lacking such an expert, plaintiff is unable to present a submissible case of product liability against Summit, rendering his claims subject to summary judgment in favor of Summit.

In his Response, plaintiff concedes that this is not a res ipsa case and that the establishment of a defective treestand requires the opinion of an expert.  Plaintiff's sole argument in opposition to defendant's motion is that Mr. Johanson is qualified to render an opinion in this case.

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c).  A fact is material only when its resolution affects the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See Anderson, 477 U.S. at 52.  In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party.  See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant.  See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988).  Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue.  See Anderson, 477 U.S. at 249.  The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a

genuine issue of material fact for trial.  See Celotex Corp. v. Citrate, 477 U.S. 317, 324 (1986).  The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Id. at 327 (quoting Fed. R. Civ. P. 1).

To recover on a product liability claim under Missouri law, a plaintiff must prove four elements: "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold."  Columbia Mut. Ins. Co. v. Epstein, 239 S.W.3d 667, 671 (Mo. Ct. App. 2007) (citing Lay v. P & Health Care, Inc., 37 S.W.3d 310, 325 (Mo. Ct. App. 2000), Keener v. Dayton Elec. Mfg. Co., 445 S.W.2d 362, 364 (Mo. 1969)).  The Eighth Circuit has upheld district court decisions to grant summary judgment in product liability cases finding that the second element cannot be met after the dismissal of the expert.  See, e.g. Dunn v. Nexgrill Industries, Inc., 636 F.3d 1049, 1057-58 (8th Cir. 2011).

In this case, the court has excluded the testimony and opinions of Mr. Johanson.  As such, plaintiff is left without any admissible evidence as to the alleged manufacturing defect of the subject treestand.  Thus, plaintiff is unable to present a submissible case and defendant is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** Defendant Summit Treestands, LLC's Motion for Summary Judgment (Doc. No. 31) be and it is **granted**. A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that Defendant Summit's Motion to Reconsider the Memorandum and Order Granting Plaintiff's Motion for Extension of Time and Leave of this Court to Reopen Expert Discovery (Doc. No. 56) be and it is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Reconsider (Doc. No. 61) be and it is **denied**.

**IT IS FINALLY ORDERED** that defendant's request for attorney's fees, expenses, and costs (Doc. No. 66) be and it is **denied**.

Dated this  27th   day of March, 2012.

_LEWIS. M. BLANTON_
LEWIS. M. BLANTON
UNITED STATES MAGISTRATE JUDGE